UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EMMA U.,<br><br>      Plaintiff,<br><br>    v.<br><br>MARTIN J. O'MALLEY,<br>  COMMISSIONER OF SOCIAL SECURITY,<br><br>      Defendant. | No. 21 CV 778<br><br>Magistrate Judge McShain |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Emma U. appeals the Commissioner of Social Security's decision denying, in part, her applications for benefits. For the following reasons, plaintiff's motion to reverse or remand [22] is denied, defendant's motion for summary judgment [23] is granted, and the Commissioner's decision is affirmed.[1]

### A.    Procedural Background

In May 2018, applications for disabled child's insurance benefits and Title XVI supplemental security income were filed on behalf of plaintiff, who was then a child under age 18. [17-1] 171. Both applications alleged an onset date of January 8, 2016. [*Id.*]. The claims were denied initially and on reconsideration. [*Id.*]. Plaintiff requested a hearing, which was held by an administrative law judge (ALJ) on June 2, 2020. [*Id.*] 19-99. In a decision dated July 1, 2020, the ALJ granted plaintiff's claims in part and denied them in part, finding that plaintiff was (1) not disabled before she reached her 18th birthday; (2) under a disability from July 29, 2018 through November 19, 2019; and (3) no longer disabled after November 19, 2019. [*Id.*] 171-98. The Appeals Council denied review, making the ALJ's decision the agency's final decision. *See* 20 C.F.R. §§ 404.955 & 404.981. Plaintiff then appealed to this Court [1], and the Court has subject-matter jurisdiction pursuant to 42 U.S.C. § 405(g).[2]

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings, except for citations to the administrative record [17], which refer to the page numbers in the bottom right corner of each page.

[2] The parties have consented to the exercise of jurisdiction in this case by a United States Magistrate Judge. [8, 11].

### B.     ALJ's Decision

The ALJ reviewed plaintiff's disability claims in accordance with both the Social Security Administration's three-step sequential-evaluation process for evaluating whether a claimant under the age of 18 is disabled and its five-step sequential-evaluation process for adult disability claims. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since her alleged onset date. [17-1] 177, 189. At step two, the ALJ determined that, at all relevant times, plaintiff had the following severe impairments: generalized anxiety disorder, depressive disorder, agoraphobia with panic disorder, social anxiety disorder, learning disabilities/borderline intellectual functioning, avoidant personality disorder, attention deficit disorder, and Noonan Syndrome characterized by supra-valvular pulmonary stenosis post-repair. [*Id.*] 178. At step three, the ALJ found that, before attaining age 18, plaintiff's impairments did not meet, medically equal, or functionally equal the severity of a listed impairment. [*Id.*] 178-88. The ALJ then ruled that, from July 29, 2018 through November 19, 2019, plaintiff was under a disability because her impairments met Listing 12.06, which addresses anxiety and obsessive-compulsive disorders. [*Id.*] 188-89. The ALJ further found that, beginning on November 20, 2019, plaintiff's impairments no longer met or equaled a listed impairment. [*Id.*] 189-92. Before turning to step four, the ALJ determined that, as of November 20, 2019, plaintiff had the residual functional capacity (RFC) to perform less than the full range of medium work. [*Id.*] 192-97. At step four, the ALJ found that plaintiff had no past relevant work. [*Id.*] 197. Finally, at step five, the ALJ found that jobs existed in significant numbers in the national economy that plaintiff could perform: mail clerk (32,000 jobs nationally), address clerk (12,000 jobs nationally), document preparer (46,000 jobs nationally), and industrial cleaner (70,000 jobs nationally). [*Id.*]. The ALJ accordingly found that plaintiff was not disabled as of November 20, 2019.

### Legal Standard

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

A child is considered disabled if she has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(C)(i). The regulations establish a three-step process to evaluate whether a child is disabled: (1) the child cannot be engaged in any substantial gainful activity, 20 C.F.R. § 416.924(b); (2) the child must have a medically determinable impairment or combination of impairments that qualifies as

2

severe, 20 C.F.R. § 416.924(c); and (3) the impairment or impairments must meet, medically equal, or functionally equal the severity of a listed impairment, 20 C.F.R. § 416.924(d).

To determine whether an adult claimant is disabled, the ALJ conducts a sequential five-step inquiry: (1) whether the claimant is unemployed; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the claimant's impairment meets or equals any listed impairments; (4) whether the claimant is unable to perform her past relevant work; and (5) whether the claimant is unable to perform any other available work in light of her age, education, and work experience. *See* 20 C.F.R. §§ 404.1520(a)(4) & 416.920(a). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

The Court reviews the ALJ's decision deferentially to determine if it is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "not a high threshold: it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019)). "When reviewing a disability decision for substantial evidence, we will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination so long as substantial evidence supports it." *Warnell v. O'Malley*, 97 F.4th 1050, 1052-53 (7th Cir. 2024) (internal quotation marks and brackets omitted).

## Discussion

Plaintiff argues that substantial evidence does not support the ALJ's findings that her impairments did not meet Listing 112.06 before she attained her 18th birthday and that she did not meet Listing 12.06 after November 19, 2019. [22] 8-12. Plaintiff's essential argument is that the evidence was consistent across the entire alleged disability period, and that "[t]he distinctions the ALJ attempted to draw between these periods are unsupported and illogical." [*Id.*] 8. Plaintiff also contends that the ALJ erred in evaluating the relevant opinion evidence. [*Id.*] 12-15.

### I.   Period Before Plaintiff's 18th Birthday

Listing 112.06 addresses anxiety and obsessive-compulsive disorders in children. *See* 20 C.F.R. § 404, Subpt. P, App. 1, 112.06. To meet the paragraph B criteria for Listing 112.06, which are identical to the paragraph B criteria for Listing 12.06, a claimant must have an extreme limitation in one, or marked limitations in two, broad areas of mental functioning: (1) understanding, remembering, or applying

information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace (CPP); and (4) adapting or managing oneself. *See Tashika M. o/b/o K.S.M v. Kijakazi*, Cause No. 3:21-CV-76-JVB, 2022 WL 2816944, at *2 (N.D. Ind. Jul. 19, 2022).

For the period before plaintiff's 18th birthday, the ALJ found that plaintiff had a marked limitation in understanding, remembering, and applying information, but only moderate limitations in the three other areas of mental functioning. In finding that plaintiff had only a moderate CPP limitation, the ALJ acknowledged that plaintiff had memory issues, experienced bouts of confusion and irritability, and had difficulty sleeping due to anxiety. [17-1] 181. The ALJ considered plaintiff's IEPs from 2016 and 2017, which reflected that plaintiff's teachers felt she was easily distracted, often off-task, and had a short attention span. [*Id.*]. But the ALJ also observed that plaintiff remained in general education classes in multiple subject areas and "only received English classes in the instructional setting to accommodate her emotional needs." [*Id.*]. The ALJ likewise acknowledged that one of plaintiff's teachers had opined that, out of 13 tasks related to attending and completing tasks, plaintiff had "no problem in three activities, a light problem in seven activities, an obvious problem in three activities, but no serious or very serious problems." [*Id.*]. As for plaintiff's moderate limitation in adapting or managing herself, the ALJ found that plaintiff could manage her own hygiene, prepare simple meals, perform basic household chores, and do some shopping. [*Id.*]. The ALJ noted that plaintiff's IEPs reflected that her adaptive behavior was age appropriate and her acquisition of ADLs was commensurate with that of her peers. [*Id.*] 182. But the ALJ also recognized that plaintiff was too anxious to drive, could not manage a bank account, required reminders to take her medications, and sometimes lacked motivation to bathe herself. [*Id.*] 181-82. Finally, regarding plaintiff's moderate limitation in interacting with others, the ALJ noted that plaintiff's teacher opined that plaintiff had no very serious problems in activities related to interacting with others, her IEPs reflected that she had no behavioral concerns in school, and the 2017 IEP further reflected that she had increased her level of classroom participation and "did very well in class discussions." [*Id.*] 181. The ALJ also observed that one of plaintiff's IEPs reflected that plaintiff might experience elevated anxiety because she did not believe she was competent to socialize or "handle the tasks and demands that are being asked of her," and two of plaintiff's teachers had expressed "significant concerns related to withdrawal." [*Id.*].

Plaintiff argues that, in reaching these conclusions, the ALJ ignored some of the observations made by Dr. Kenneth Levitan, a psychiatrist who performed a consultative examination in August 2018. *See* [17-1] 583-86. Plaintiff also faults the ALJ for not addressing the opinions of Dr. Peter Roccaforte, a psychologist who examined plaintiff in September 2018. [*Id.*] 587-91. The Court rejects these arguments for three reasons. First, as the Commissioner argues, *see* [24] 4-5, these examinations took place after plaintiff had attained her 18th birthday–and thus focused on plaintiff's mental status for the closed period in which the ALJ found

4

plaintiff was disabled. Second, plaintiff makes no argument as to why the specific observations that Drs. Levitan and Roccaforte made were relevant to this earlier period of alleged disability, let alone as to why any of their findings required the ALJ to conclude that plaintiff had a marked, rather than a moderate, limitation in another area of mental functioning. *Cf. Hall v. Berryhill*, 906 F.3d 640, 644 (7th Cir. 2018) (refusing to consider "perfunctory and undeveloped" arguments). Third, plaintiff suggests that, simply because the ALJ relied on one observation made by Dr. Levitan–that plaintiff had difficulties with recent and remote memory, *see* [17-1] 180– in finding that plaintiff had a marked limitation in understanding, remembering, or applying information, the ALJ was bound to consider all of Dr. Levitan's findings (or at least explain why he had not done so) in evaluating the other areas of mental functioning. But the ALJ was "subject to only the most minimal of articulation requirements," and he was not required to "address every piece or category of evidence identified by [plaintiff]." *Warnell*, 97 F.4th at 1053. The ALJ's decision makes plain, in any event, that he found Dr. Levitan's and Dr. Roccaforte's opinions to be most relevant to the closed period in which he concluded plaintiff was disabled, and that finding was, as the Court explains below, supported by substantial evidence. The ALJ's "failure" to address the particulars of Dr. Levitan's and Dr. Roccaforte's opinions while addressing plaintiff's mental functioning before her 18th birthday was not error–especially given plaintiff's own failure to demonstrate why these opinions were relevant or why they supported a finding that she had marked limitations.

Plaintiff also argues that the ALJ ignored evidence from 2017 and onwards that her chest pains and shortness of breath were psychosomatic and that a school psychologist had diagnosed cognitive limitations and observed that plaintiff had anxiety and withdrawal issues. [22] 9. But the ALJ specifically considered the school psychologist's report while discussing plaintiff's limitations in acquiring and using information. *See* [17-1] 185 (citing Ex. 2F/40-47). Furthermore, plaintiff's argument that the ALJ was somehow ignorant of her cognitive limitations cannot be squared with the ALJ's finding that plaintiff was markedly limited in understanding, remembering, and applying information (or his discussion of the evidence suggesting the interplay between her mental impairments and cognitive limitations). *See* [*id.*] 193. Finally, the ALJ's discussion of a cardiology report from March 2017 stating that plaintiff's shortness of breath was "likely not related to a cardiac condition" shows that the ALJ did not ignore this issue, either. [*Id.*] 192.

For these reasons, the Court finds that substantial evidence supports the ALJ's decision that plaintiff did not meet Listing 112.06 before she attained her 18th birthday.[3]

---

[3] In a one-sentence argument, plaintiff contends that the ALJ's "analysis of the functional domains replicated his analysis of the Paragraph B areas and failed to address the same evidence." [22] 10. The Court finds that this perfunctory and undeveloped argument is waived. *Accord Patricia N. v. O'Malley*, Case No. 20-cv-50388, 2024 WL 366466, at *5 n.3 (N.D. Ill. Jan. 3, 2024) ("Because perfunctory and undeveloped arguments are waived, the

5

## II. Period After November 19, 2019

The ALJ ruled that plaintiff did not meet Listing 12.06 after November 19, 2019 because she had only moderate mental limitations. Critical to the ALJ's decision was his finding, based on the treatment notes prepared by plaintiff's treaters, that plaintiff experienced significant medical improvement as of November 20, 2019, such that her limitations in CPP and adapting or managing herself were no longer marked, as they had been from July 29, 2018 through November 19, 2019:

> With regard to concentrating, persisting, or maintaining pace, beginning November 20, 2019, the claimant has moderate limitations. As of November 20, 2019, the record reflects that the claimant had a history of inattention and difficulty with memory (Ex. 11F/11). That said, at that time, it was noted that concerns for inattentiveness and poor memory appear to have been related to her high anxiety state, as these issues have resolved with improvement in self esteem/confidence in her own abilities (Ex. 11F/14). Consequently, her fidgeting when anxious was reduced, and she was able to work on her organization skills and independent decision making because she has actively worked on addressing individual dependent personality traits (Id.). At that time, and during future psychiatry and psychotherapy sessions, the claimant was described as having normal cognitive functioning, memory, attention, concentration and calculation consistent with developmental age (Ex. 11F/12; Ex. 15F/200-201). In addition, the claimant's testimony and evidence indicate that as of November 20, 2019, she could take public transportation independently; she was able to work a temporary assembly line job for one month without accommodations; and she has independently babysat her brother's eight-month-old baby (Testimony; Ex. 11F/8-9, 14). Accordingly, the claimant has moderate limitations in concentration, persistence or pace.
>
> As for adapting or managing oneself, beginning November 20, 2019, the claimant has moderate limitations. The claimant stated that she requires reminders to take her medications, and she is able to bath and dress herself but sometimes lacks motivation (Testimony). For example, the claimant stated that she has two to five "bad days" per week where it is difficulty for her to get out of bed or leave her room; and she recalled that there was a period in eighth grade where she went a month without showering (Id.). That said, the claimant's testimony and evidence indicate that, as of November 20, 2019, she could take public

---

Court need not consider the Plaintiff's single-sentence challenge to" ALJ's evaluation of opinion evidence) (internal brackets, quotation marks, and ellipses omitted). Even if it were not waived, the argument would fail for the same reasons that plaintiff's argument that she met Listing 112.06 fails.

> transportation independently; she was able to work a temporary assembly line job for one month without accommodations; and she has independently babysat her brother's eight-month-old baby (Testimony; Ex. 11F/8-9, 14). In addition, I note that while the claimant was previously hospitalized due to depression and suicidal ideation, in April 2020, treatment notes reflect that the claimant no longer has depressive symptoms or suicidal ideation, which has significantly helped reduce her baseline anxiety and self-deprecating ruminations that caused her to present with a persistent depressive disorder (Ex. 15F/203). Considering all of the above, the claimant has moderate limitations in adapting or managing oneself.

[17-1] 190-91.

The ALJ's RFC determination contains additional support for his determination that plaintiff's mental limitations were no longer marked after November 19, 2019. The ALJ explained that, with plaintiff participating in weekly therapy sessions beginning in April 2019 and increasing her dosage of Fluoxetine, plaintiff experienced "significant progress in addressing her severe anxiety symptoms and cognitive distortions that exacerbate her persistently depressed mood." [17-1] 193. The ALJ noted that Dr. Jayson Masaki, plaintiff's psychiatrist, documented "significant progress" in plaintiff's ability to schedule activities outside the home and in improving her sleep-wake cycle. [*Id.*]; *see also* [17-5] 1543. And the ALJ relied on plaintiff's reports that she had less trouble taking public transportation in February 2020 and that a temporary factory job she obtained was not stressful for her. [17-1] 193.

Plaintiff argues that the ALJ's decision "mischaracterized" the evidence and was otherwise unsupported, *see* [22] 10, but these arguments are just requests that the Court weigh the evidence differently than the ALJ did. For example, plaintiff contends that the November 20, 2019 treatment note on which the ALJ relied does not show that plaintiff's condition had improved. *See* [22] 10-11. In support, plaintiff asserts that Dr. Masaki's treatment notes reflect that she was "visibly flustered" during the appointment and was worried about taking public transportation. [*Id.*]. Plaintiff also contends that she displayed symptoms during this visit that were similar to those she displayed during a November 7, 2019 visit with Masaki, which was during the period where the ALJ found that plaintiff was disabled. [*Id.*]. None of these arguments has merit. To begin, the ALJ never concluded, or even suggested, that plaintiff had improved to the point that her mental impairments caused no limitations. The ALJ instead made the more modest point that plaintiff's mental limitations were moderate and not presumptively disabling–a point that Dr. Masaki's own opinions support. *See* [17-4] 1329 ("Treatment has reduced her symptom severity, with partial improvement in mood and cognitive functioning . . . Symptom reduction over the last 1.5 years of treatment has been progressive, but modest and

7

slow."). Thus, the bare fact that plaintiff's condition had not completely resolved as of November 20, 2019 does not undermine the ALJ's decision that plaintiff had experienced medical improvement. *See Elizabeth A.D. v. Saul*, No. 19 C 6024, 2021 WL 148831, at *6 (N.D. Ill. Jan. 15, 2021) ("the fact that Elizabeth continues to suffer from some symptoms of her bipolar disorder does not disprove that medical improvement occurred"). In any event, the ALJ did not rely solely on the November 20 treatment note in finding that plaintiff's condition had improved. To the contrary, the ALJ noted that plaintiff displayed "normal cognitive functioning, memory, attention, concentration and calculation consistent with developmental age at the November 20 appointment "and during future psychiatry and psychotherapy sessions[.]" [17-1] 190; *see also* [*id.*] 194 (discussing plaintiff's improved condition in February 2020 and April 2020). As for the evidence of plaintiff's ability to take public transit, the ALJ recognized that plaintiff "continued to worry about issues that could arise on public transportation" but also "acknowledged the ability to use her phone's GPS to avoid getting lost." [17-1] 193. The ALJ was permitted to consider this evidence in finding that plaintiff's mental limitations were no longer marked. *See Manuel C. v. O'Malley*, No. 20 CV 5525, 2024 WL 916226, at *10 (N.D. Ill. Mar. 4, 2024) (ALJ permissibly relied on plaintiff's ability to take public transportation to find that plaintiff's mental limitations were not as severe as alleged).

Plaintiff also insists that the ALJ's "claim that [she] performed her one-month factory job without accommodations is misleading." [22] 12. But the ALJ accurately summarized plaintiff's testimony about this job, including her statements that she could perform tasks independently once the task had been explained to her and that she sometimes "ask[ed] that the machine be stopped so that she could catch up with the pace." [17-1] 194. The ALJ also observed that plaintiff had described her job to Dr. Masaki as "very easy for her and not stressful at all," which further supports the ALJ's decision that plaintiff's ability to work in a factory was some evidence that plaintiff did not have marked mental limitations. *See* [*id.*] 190, 193-94; [17-5] 1610.

Finally, plaintiff faults the ALJ for relying on evidence that she babysat her nephew without expressly acknowledging in his decision that her brother was present while plaintiff was babysitting. [22] 12. But plaintiff testified at the hearing that her brother was present while she babysat his son, *see* [17-1] 35, so the Court does not credit plaintiff's claim that the ALJ ignored this fact. More to the point, plaintiff testified that she was able to feed her nephew and change his diapers, and nothing in her hearing testimony suggests that she relied on her brother for help with these duties. And while plaintiff testified that she experienced stress, and even occasional panic attacks, while babysitting for her nephew, the ALJ's failure to specifically discuss that portion of her testimony in his decision does not mean that the ALJ's decision is unsupported. *See Warnell*, 97 F.4th at 1053.

For these reasons, the Court holds that substantial evidence supports the ALJ's decision that plaintiff did not meet Listing 12.06 after November 19, 2019.

8

### III. Opinion Evidence

Plaintiff argues that Dr. Masaki's opinions from September 2019 and February 2020 support a finding that, before her 18th birthday and after November 19, 2019, plaintiff had at least marked limitations in all four areas of mental functioning. [22] 13. Plaintiff also faults the ALJ for relying on the opinions of two state agency reviewers, who concluded in 2018 that plaintiff did not meet a listing, in finding that plaintiff did not meet Listing 12.06 after November 19, 2019.

"An ALJ has an obligation to evaluate every medical opinion and explain the weight given to the opinion." *Georgios A. v. Kijakazi*, No. 20-cv-2729, 2022 WL 1004249, at *5 (N.D. Ill. Apr. 4, 2022) (internal quotation marks omitted). The ALJ "will not defer or give any specific weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from a [claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Instead, the ALJ need only explain "how persuasive [he] find[s] all of the medical opinions and all of the prior administrative medical findings in [a claimant's] case record." 20 C.F.R. § 404.1520c(b). In deciding how persuasive a given opinion or finding is, the ALJ considers "supportability, consistency, relationship with the claimant, specialization, and other factors that tend to support or contradict" the opinion or finding. *Victor F. v. Kijakazi*, No. 22 C 1451, 2023 WL 2429357, at *3 (N.D. Ill. Mar. 9, 2023). "Supportability and consistency are the two most important factors." *Id.* "An ALJ's decision must explain how she considered the factors of supportability and consistency, but she is not required to explain how she evaluated the other factors." *Id.* "While a detailed analysis is not required, the ALJ must consider the regulatory factors and explain why a medical opinion is not supported or is not consistent with the record to give a reviewing court the bridge to connect the outcome to the record." *Id.* (internal quotation marks and brackets omitted).

### A. Dr. Masaki's Opinions

As the ALJ explained:

> In February 2020, Dr. Masaki also opined that the claimant has a minimal capacity to adapt to changes in her environment or to demands that were not already part of her daily life (Ex. 13F/7- 9). The claimant has marked difficulties in maintaining social functioning (Id.). The claimant's illness causes deficiencies of concentration and of persistence, resulting in frequent failure to complete tasks (Id.). The claimant's illness caused repeated episodes of deterioration or compensation in work or work-like situations that required the individual to withdraw from that situation and/or to experience exacerbation of signs and symptoms (Id.). The claimant could not work in a non-sheltered work setting (Id.). The claimant could work in select work environments that

> are very supportive and understand of her difficulties with worrying under minimal stress and where she could avoid social interactions (Id.). The claimant would require a supervisor who could reduce criticizing the claimant's about her work style too much and would all her to develop her self-confidence towards more challenging jobs (Id.).
>
> Prior to November 20, 2019, I found Dr. Masaki's opinions persuasive, as they are consistent with the claimant's significant symptoms at the start of treatment and her subsequent hospitalization (see, e.g., Ex. 4F/2, 4; Ex. 5F/1, 3; Ex. 7F/3-6; Ex. 9F/18-19, 22, 44; Ex. 11F/195; Ex. 13F/4). That said, as of November 20, 2019, I found Dr. Masaki's opinions unpersuasive, as they are not supported by his own treatment notes and they are inconsistent with the totality of the record, including the claimant's testimony regarding her activities of daily living, which reflects improvement in the claimant's symptoms over time (see, e.g., Testimony; Ex. 4F/4; Ex. 5F/1; Ex. 9F/22; Ex. 10F/13; Ex. 11F/8-9, 12; Ex. 14F/261; Ex. 15F/198, 203, 209, 231, 257

[17-1] 195.

The ALJ's handling of Dr. Masaki's opinions had a substantial evidentiary basis. First, contrary to plaintiff's argument, *see* [22] 13, the ALJ expressly considered the supportability of Masaki's opinions when he found that the opinions were "not supported by his own treatment notes" as of November 20, 2019. [17-1] 195. Second, the ALJ permissibly found that Dr. Masaki's opinions were inconsistent with the broader medical record, including plaintiff's testimony about her ability to perform ADLs and her improved condition over time–especially her normal and developmentally-appropriate attention and concentration, her improved ability to schedule activities outside the home, and her ability to take public transit and using her phone's GPS to help find her destination. *See* [*id.*] 788, 792; [17-5] 1609, 1810, 1813, 1872. The fact that, in plaintiff's view, Dr. Masaki's opinions are consistent with other parts of the medical record does not establish that the ALJ's decision lacks a substantial basis in the evidence. *See Martrice D. v. Kijakazi*, No. 21-cv-3512, 2022 WL 4234970, at *3 (N.D. Ill. Sept. 14, 2022) ("the question before the Court is whether the ALJ's findings are adequately supported by substantial evidence in the administrative record, not whether the record could also support different conclusions"). Finally, the ALJ appropriately explained why he credited Masaki's opinions for the closed period of disability, given that these opinions were "consistent with [plaintiff's] significant symptoms at the start of treatment and her subsequent hospitalization" for suicidal ideation. [*Id.*].

Given the totality of the evidence, it was permissible for the ALJ to find that Dr. Masaki's opinions were credible to the extent they related to the period in which he concluded plaintiff was disabled, but not credible outside that period. *See Sonji L.*

10

*v. Kijakazi*, No. 19 C 4109, 2022 WL 672741, at *5 (N.D. Ill. Mar. 7, 2022) ("If the ALJ discounts the physician's opinion after considering [the relevant] factors, the court must allow that decision to stand so long as the ALJ minimally articulated his reasons–a very deferential standard that the Seventh Circuit has deemed lax.") (internal quotation marks and brackets omitted).[4]

### B. State Agency Opinions

The ALJ explained that he credited the opinions of two state agency consultants for the period after November 19, 2019 because those opinions were consistent with plaintiff's improved condition and reduced symptoms during that period:

> The record includes the opinions of two state agency psychological consultants, Donna Hudspeth, Psy.D., and Michele Womontree, Psy.D. (Ex. 1A; Ex. 7A). According to Dr. Hudspeth and Dr. Womontree, the claimant has sufficient cognitive abilities and memory skills to engage in one- to two-step tasks in a work setting (Id.). The claimant could sustain attention, concentration, persistence, and pace to perform these tasks (Id.). This claimant could communicate for vocational purposes in the work setting with supervisors and fellow employees (Id.). She should not be required to deal excessively with the public (Id.). The claimant can negotiate transportation to get to work environments (Id.). Evidence indicates this claimant would be able to deal with the structure of a work routine, follow work rules, and make ordinary work decisions (Id.).
>
> I found the opinions of Dr. Hudspeth and Dr. Womontree unpersuasive prior to November 20, 2019, as the evidence of the claimant's symptoms and treatment including an in-patient hospitalization, support a finding that she met a Listing during this period (see, e.g., Ex. 4F/2, 4; Ex. 5F/1, 3; Ex. 7F/3-6; Ex. 9F/18-19, 22, 44; Ex. 11F/195; Ex. 13F/4). That said, as of November 20, 2020, I found their opinions persuasive, as they are supported by the claimant's testimony regarding her activities of daily living, and they are consistent with the claimant's treatment notes, which reflect improvement in her symptoms and ability to perform activities of daily living (see, e.g., Ex. 4F/2, 4; Ex. 5F/1, 3; Ex. 7F/3-6; Ex. 9F/18-19, 22, 44; Ex. 11F/195; Ex. 13F/4).

---

[4] In another one-sentence argument, plaintiff contends that Dr. Masaki's opinions "support that she could not maintain that she could not maintain competitive employment." [22] 14. Rather than develop this argument or demonstrate how (or why) the ALJ's RFC determination lacks substantial evidentiary support, plaintiff simply recites Masaki's opinions (which the ALJ found, based on substantial evidence, to be unpersuasive). This argument, too, is waived. *See Patricia N.*, 2024 WL 366466, at *5 n.3

[17-1] 196.

Contrary to plaintiff's argument, *see* [22] 14, there was nothing "illogical" in this finding. The state agency reviewers concluded that plaintiff had relatively mild mental limitations when they reviewer her file in 2018. The ALJ reasonably explained why these opinions were inconsistent with plaintiff's condition after her 18th birthday and before November 19, 2019, especially her hospitalization for suicidal ideation. But nothing prevented the ALJ from considering that these opinions–which, though rendered in 2018, did not reflect presumptively disabling limitations–were generally consistent with plaintiff's improved condition after November 19, 2019.

For these reasons, the Court finds that the ALJ's handling of the state agency consultants' opinions was supported by substantial evidence.

## Conclusion

Plaintiff's motion to reverse or remand [22] is denied, defendant's motion for summary judgment [23] is granted, and the Commissioner's decision is affirmed.

**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: August 19, 2024**